UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

MITCHELL TALLY                                                                                    PLAINTIFF

V.                                                             CIVIL ACTION NO.4:10-cv-174-CWR-FKB

MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY                                                                             DEFENDANT

REPORT AND RECOMMENDATION

This cause is before the undersigned for a report and recommendation regarding the appeal by Mitchell Tally of the Commissioner of Social Security's final decision denying Tally's claim for a period of disability, disability insurance benefits, and supplemental security income benefits.  In rendering this recommendation, the undersigned has carefully reviewed the administrative record regarding Tally's claims, including the administrative decision, the medical records and a transcript of the hearing before the Administrative Law Judge ("ALJ"); Plaintiff's motion for summary judgment (Docket No. 13) and accompanying memorandum; and Defendant's motion to affirm the decision of the commissioner (Docket No. 15) and accompanying memorandum, as well as Plaintiff's Reply to the Response to his Motion (Docket No. 18).  For the reasons discussed in this report and recommendation, the undersigned recommends that this matter be remanded for further development of the record.

I. FACTS

In July, 2006, Tally applied for Disability Insurance Benefits and Supplemental Security Income (SSI) benefits, alleging that he became disabled on June 20, 2005.  His claim was initially denied and was denied upon reconsideration.  Tally requested an administrative hearing,

which was held on May 15, 2009. Tally and his non-attorney representative appeared at the hearing. Tally testified, as did a vocational expert. (Docket No. 7-2, pp. 10-35) On August 14, 2009, the ALJ found that Tally was not disabled since he had the residual functional capacity to perform his past relevant work. (Docket No. 7-2, p. 15) Tally's request for review was denied by the Appeals Council on August 11, 2010, and therefore, the ALJ's decision became the final decision of the defendant. See 20 C.F.R.§ 404.981.

On appeal, as addressed *infra*, Tally argues that the ALJ erred by, *inter alia*: (1) finding Tally's mental impairment non-severe; (2) relying on incomplete and contradictory opinions when determining residual functional capacity ("RFC"), thereby rendering the step four finding unsupported by substantial evidence; and (3) finding Tally not credible. The Commissioner, however, asserts that the ALJ properly weighed all the evidence and that his decision is supported by substantial evidence.

Tally was fifty-two (52) years old on the alleged onset date. He finished the 11th grade (Docket No. 7-2, p. 24) and had past relevant work experience as a forklift operator, lumber handler, stores laborer, and commercial or industrial cleaner. (Id., pp. 30-31) Tally claims to have been disabled since June, 2005, (Id., p. 10) and testified that he had not worked since 2005. (Id., p. 23) Tally testified that he was 57 years old at the time of the hearing. (Id.)

At the hearing, Tally testified that his medical problems were heart attack and stroke. (Id., p. 25) Tally could not remember the names of his medications, and stated that there are prescriptions he cannot get filled because he cannot afford to do so. (Id., p. 26)

## II. ADMINISTRATIVE DECISION

The ALJ summarized the medical evidence as follows:

Admission records from Methodist Healthcare show that on June 22, 2005, the claimant was admitted due to CT of his head showing acute left thalamic hemorrhage and cranial CT revealing acute paraenchymal hemorrhage left thalamus. His main major deficit at time of admission was mild drift on the right upper extremity. During this hospitalization, he had some episodes of chest pain. Heart studies were consistent with a myocardial infarction. Diagnoses were left basal ganglia intraparenchymal hemorrhage and myocardial infarction. He was discharged on July 8, 2005 in stable condition. (Exhibit 1F and 2F)

The claimant underwent a consultative examination by Dr. Kamal J. Mohan on September 14, 2006. The claimant related a history of hypertension, stroke, and heart attack. He complained of left sided weakness and impaired memory as well as chest pain and exertional shortness of breath since he had his myocardial infarction. On physical examination his blood pressure was 217/137. Dr. Mohan observed that the claimant was standing and walking without difficulty and he did not have a limp. Range of motion of his lumbar spine was normal. Range of motion of his cervical spine was normal. Range of motion of his shoulders, elbows, and wrists were normal. His handgrip was normal. Sensation was intact. Range of motion of all fingers and thumbs were normal. His memory was fairly well. His concentration was good. Dr. Mohan noted that the claimant did not have any cranial nerves deficit and he did not have any weakness or numbness of any body part. Dr. Mohan's impression was uncontrolled hypertension, history of myocardial infarction, and history of stroke in June 2005 with no residual defect. (Exhibit 3F)

Admission records from Neshoba County General Hospital indicate that on September 7, 2007 the claimant presented to the emergency room with complaints of shortness of breath and chest pain. Chest x-ray was consistent with cardiomegaly and congestive heart failure. EKG revealed left atrial enlargement and left ventricular hypertrophy. Diagnosis was congestive heart failure. He was transferred to Rush Foundation Hospital on September 8, 2007. He was admitted and treated with a combination of diuresis and left ventricular dysfunction drug regimen. Adenosine nuclear test revealed no ischemia. Cardiac enzymes did not show an infarct pattern. Echocardiogram revealed an ejection fraction of 20 to 25 percent. He was strongly advised to be compliant with medication

> and office follow. However, there was significant concern with whether or not he was going to demonstrate compliance. Diagnosis was congestive heart failure, left ventricular systolic dysfunction, ejection fraction of 20 percent, no ischemia, hypertension and questionable compliance. (Exhibit 7F and 12F)
>
> Emergency room records from Neshoba County General Hospital show that on December 17, 2008, the claimant presented to the emergency room with complaint of shortness of breath. Impression was respiratory failure secondary to pulmonary edema. He was transferred to Jeff Anderson Regional Medical Center. Upon admission to Jeff Anderson Regional Medical Center the claimant was on a ventilator. He was treated with aspirin, nitrates and diuresis. He was weaned from the ventilator and he underwent cardiac catheterization, which revealed multifocal coronary disease. He subsequently underwent angioplasty. Diagnosis was severe ischemic cardiomyopathy, status post angioplasty and acute cardiac syndrome. On January 1, 2009 the claimant was discharged in stable condition. (Exhibits 8F, 9F, and 10F)
>
> The claimant underwent a consultative examination by Dr. William M. Lewis on February 26, 2009. The claimant related a history of stroke in June 2005. He reported that he continued to have weakness of both arms, worse on the left than the right. He stated that he was not seeing any doctors for weakness in his arms and hands. On physical examination his blood pressure was 186/122. Orthopedic examination showed no peripheral joint that was red, hot, tender or swollen or that showed bony deformity, instability, or effusion. Neurologic examination showed all cranial nerves appeared to be intact. Dr. Lewis noted that he could not detect any focal muscular weakness, atrophy or fasciculations. Reflexes to the upper and lower extremities were completely normal. Dr. Lewis' impression was severe hypertension, a history of stroke in 2005, and subjective weakness of both arms. (Exhibit 11F)

 (Docket No. 7-2, pp. 12-13)

After considering the evidence of record in light of the five step process employed to determine whether an individual is disabled, the ALJ found the following severe impairments: hypertension, status post cerebrovascular accident, myocardial infarction, cardiomyopathy, congestive heart failure and status post angioplasty. Although the ALJ found these severe

4

impairments, the ALJ further found that they did not reach the level required to render him disabled within the meaning of the applicable law. (Docket No. 7-2, pp. 12-15) The ALJ determined that Tally had the residual functional capacity to perform medium work, except that he must avoid extreme temperatures, and that Tally could perform his past relevant work as a forklift operator/industrial truck operator and warehouse janitor/store laborer. (Id., pp. 15-16)

### III. STANDARD OF REVIEW

The undersigned recognizes that this Court's review is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g); Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). The Fifth Circuit has defined the "substantial evidence" standard as follows:

> [s]ubstantial evidence means more than a scintilla, less than a preponderance, and is:
> such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."

Abshire v. Bowen, 848 F.2d 638, 640 (5th Cir. 1988)(quoting Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983)(citations omitted)).

In applying the substantial evidence standard, the court must carefully examine the entire record but must refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995). Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve. Martinez v.

Chater, 64 F.3d 172, 174 (5th Cir. 1995). Hence, if the Commissioner's decision is supported by the evidence, and the proper legal standards were applied, the decision is conclusive and must be upheld by this court. Paul v. Shalala, 29 F.3d 208, 210 (5th Cir. 1994), overruled on other grounds, Sims v. Apfel, 530 U.S. 103, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000).

## IV. DISCUSSION

In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether "(1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." Audler v. Astrue, 501 F.3d 446, 447-48 (5th Cir.2007) (citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987)). If, at any step, the claimant is determined to be disabled or not disabled, the inquiry ends. Id. at 448 (citing Lovelace, 813 F.2d at 58). The burden of establishing disability rests with the claimant for the first four steps and then shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant is able to perform. Bowen v. Yuckert, 482 U.S. 137, 163 n. 5 (1987).

On appeal, Tally maintains that the ALJ's decision is not supported by substantial evidence. Tally argues that the Commissioner's decision is not supported by substantial evidence because the opinions relied on were incomplete and contradictory with respect to residual functional capacity ("RFC"). Tally contends that the ALJ did not specify the weight given to the opinions of two consultative examining physicians, Drs. Mohan and Lewis, and relied on the opinions of Drs. Pennington and Warner, whose opinions were based on Dr.

Mohan's, which Tally alleges was incomplete inasmuch as not all medical records were considered by Dr. Mohan.

The ALJ "owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts." Brock v. Chater, 84 F.3d 726, 728 (5th Cir. 1996). In this case, the ALJ relied on conflicting consultative reports neither of which fully addressed Tally's medical history. Though the ALJ in his opinion references medical records from a 2005 hospitalization, Dr. Mohan's report indicates he was not provided any medical records. Tally did report to Dr. Mohan a heart attack, a stroke and a two week hospitalization. Dr. Mohan, however, saw Tally in 2006, before two significant hospitalizations and before Tally was diagnosed with congestive heart failure in 2007, as well as with acute cardiac syndrome in 2008. Even without those diagnoses, Dr. Mohan imposed lifting restrictions. Dr. Mohan's report indicates Tally can occasionally lift only 30 pounds, but Dr. Pennington, who did not examine Tally and whose opinion is therefore entitled to less weight, see 20 C.F.R. § 404.1527(d)(1), disagreed and 50 pounds is checked in the residual functional capacity assessment portion of his report. (Docket No. 7-7, p. 53).

Dr. Lewis, who examined Tally in February, 2009, gave him no restrictions. (Docket No. 7-12, pp. 20, 23) However, Dr. Lewis's report is inconsistent with other medical evidence of record. In his report, Dr. Lewis states, "He has never had a catheterization and does not see heart doctors now."[1] (Docket No. 7-12, p. 24) But, medical records on file document that Tally was hospitalized in 2007 with congestive heart failure and again in 2008 for treatment of heart

---

[1] According to his report, Dr. Lewis assessed Tally for two (2) complaints or "problems": "1) Sneezing when he is around dust[;] [and] 2) weak hands." (Docket No. 7-12, p. 20)

7

problems, which included a catheterization and angioplasty performed on December 30, 2008. (Docket Nos. 7-12, p. 29; 7-8, p. 3; 7-9, pp.2-4) The ALJ included Tally's congestive heart failure and post-angioplasty status in his listing of severe impairments. Although the ALJ refers to these medical records, it is clear that those records were not provided to Dr. Lewis. Since it does not appear that Dr. Lewis had an accurate and complete history, and Dr. Mohan saw Tally well before the significant heart-related incidents, this claim must be remanded for further development of the record.

Pursuant to 20 C.F.R. § 404.1519p, when reviewing the report of a consultative examination, the social security administration is to consider, among other items, three questions the undersigned cannot conclude were fully addressed in this case:

>(1)Whether the report provides evidence which serves as an adequate basis for decisionmaking in terms of the impairment it assesses;
>
>(2)Whether the report is internally consistent; Whether all the diseases, impairments and complaints described in the history are adequately assessed and reported in the clinical findings; Whether the conclusions correlate the findings from [the] medical history, clinical examination and laboratory tests and explain all abnormalities;
>
>(3)Whether the report is consistent with the other information available to us within the specialty of the examination requested; Whether the report fails to mention an important or relevant complaint within that specialty that is noted in other evidence in the file....

20 C.F.R. § 404.1519p (a)(1-3). When a report is "inadequate or incomplete," the regulation requires that the ALJ "contact the medical source who performed the consultative examination, give an explanation of [the] evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." 20 C.F.R. § 404.1519p(b); see, e.g., Adams v. Astrue, 2010 WL 3037507, ¶ 4 (N.D. Miss. Aug. 3, 2010).

In this case, the ALJ found that Tally suffers from a number of severe impairments, some of which were based on Tally's 2007 and 2008 hospitalizations, treatment, and diagnoses. But, Dr. Mohan conducted his examination prior to 2007, and although Dr. Lewis conducted his examination after 2008, Dr. Lewis did not have the 2007 or 2008 records and, therefore, did not consider the 2007 and 2008 treatment and diagnoses in his report or opinion. Accordingly, this case should be remanded for a consultative examination by a physician who has been provided Tally's complete medical records and history.

## V.  CONCLUSION

For the above reasons, the undersigned recommends that the Defendant's Motion to Affirm be denied and that this matter be remanded for a complete consultative examination. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. §636; Fed. R. Civ. P. 72(b)(as amended, effective December 1, 2009); <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 24th day of February, 2012.

       /s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE